*NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**JENNIFER LYNN BOX,**<br><br>                      Debtor. | Case No. **20-90277-BPH** |
| **JENNIFER LYNN BOX**<br>                      Plaintiff.<br><br>-vs-<br><br>**GRANITE STATE MANAGEMENT & RESOURCES,**<br><br>                      Defendant. | Adv. No. **21-09004-BPH** |

## MEMORANDUM OF DECISION

In this adversary proceeding, Defendant Granite State Management & Resources ("Granite") filed a Motion for Summary Judgment on August 20, 2021.[1] Plaintiff filed an Objection to the Motion on September 7, 2021.[2] A hearing on the Motion and Objection was scheduled for October 7, 2021. At the hearing, the parties agreed that to submit the matters on their respective briefs.[3] The matter is ripe for a decision.

Plaintiff's Complaint seeks an "undue hardship" discharge of student loans under § 523(a)(8). At this stage, the Court is tasked with applying the test originally formulated by the Second Circuit in *Brunner v. New York State Higher Education Services Corporation*. 831 F.2d 395 (2d Cir. 1987). The *Brunner* test, as explained below, is a three-pronged, fact-intensive inquiry. Based on the record in existence at this stage in the proceeding, genuine issues of

---

[1] ECF No. 20 ("Motion"). References to "ECF Nos." refer to the docket in this adversary case. Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure
[2] ECF No. 24.
[3] *See* ECF No. 32.

material fact exist that prevent the Court from granting summary judgment in favor of Granite. Accordingly, the Motion must be denied.

## BACKGROUND

Plaintiff is thirty-three years old and resides in Missoula, Montana.[4] She currently works as a legal assistant for the City Attorney's Office, where she has been employed since October of 2017.[5] In her position, Plaintiff is employed on a full-time basis and is paid an hourly wage of $21.18.[6] Her hourly wage yielded a gross salary of $38,520 in 2020. Her annual gross pay is expected to increase to between $40,000 and $46,000 over the next five years.[7]

After graduating from high school in Sheridan, Wyoming, Plaintiff attended the University of Montana as a non-resident student from 2006 and 2012.[8] To finance her higher education, Plaintiff obtained federal student loans as well as six private student loans from Navient, which originated between 2006 and 2012.[9] Plaintiff's grandmother, Kathryn Jones ("Jones"), was a co-signor on four of the six Navient Loans.[10] In October of 2018, Plaintiff elected to consolidate the Navient loans with Granite.[11] Jones again agreed to act as a co-signor on the newly consolidated loan with Granite ("Granite Loan").[12] The principal amount of the Granite Loan was $163,158, which accrued at an interest rate of 6.14%.[13] Plaintiff agreed to make approximately 240 monthly payments in the amount of $1,188.22 on the Granite Loan between December of 2018 and November of 2038.[14]

Since the origination of the Granite Loan, Jones has sent monthly checks to Plaintiff in the amount of $890 for the purpose of making monthly payments on the Granite Loan.[15] Plaintiff made each of the required monthly payments on the Granite Loan between December of 2018 and September of 2020.[16] Plaintiff's ability to do so was based, at least in part, on the monthly payments she received from Jones.[17] Jones ceased making the monthly payments to Plaintiff in October of 2020.[18]

---

[4] ECF No. 26 at 2.
[5] *Id.* at 4.
[6] *Id.* at 5.
[7] *Id.* at 5–6.
[8] *Id.*
[9] *Id.* at 2–3.
[10] *Id.* at 3.
[11] *Id.* at 9.
[12] *Id.* at 10.
[13] *Id.* at 10–11.
[14] *Id.*
[15] *Id.* at 12.
[16] *Id.* at 13.
[17] *Id.* at 14.
[18] *Id.* at 12.

In November of 2020, Plaintiff contacted Granite and requested an economic hardship deferment.[19] Granite granted her request.[20] Plaintiff subsequently contacted Granite about reducing the amount of her monthly payments and was told no options were available.[21] Plaintiff filed her Chapter 7 bankruptcy petition on December 28, 2020.[22] The current outstanding balance on the principal of the Granite Loan is $153,169.11.[23] The current overdue interest on the Granite Loan is $8,960.42.[24]

Currently, Plaintiff's net pay is $2,610.57 per month.[25] Her monthly expenses are $3,545.71.[26] Plaintiff's monthly payment on the Granite Loan in the amount of $1,188.22 is her largest expense. When combined with the monthly payments on her federal student loans, more than half of Plaintiff's monthly take home pay goes towards payment of student loan obligations.[27] She receives approximately $500 per month from her live-in boyfriend, although he is under no legal obligation to make these contributions.[28] These funds are used to assist Plaintiff with her monthly rent, which is currently $807, utility bills, and wireless internet.[29] Plaintiff's monthly expenses, according to her schedules and accounting for her recently increased rent, are displayed below:

| Item Description | Amount |
| --- | --- |
| Rent | $807 |
| Home maintenance, repair, and upkeep expenses | $50 |
| Electricity, heat, natural gas | $73 |
| Telephone, cell phone, internet, satellite, and cable services | $153.41 |
| Internet TV subscription | $75.97 |
| Food and housekeeping supplies | $385 |
| Clothing, laundry, and dry cleaning | $85 |
| Personal care products and services | $43 |
| Medical and dental expenses | $56 |
| Transportation | $200 |

---

[19] *Id.* at 13.
[20] *Id.*
[21] *Id.* at 18.
[22] *Id.* at 13.
[23] *Id.*
[24] *Id.*
[25] *Id.* at 16.
[26] *Id.*
[27] *Id.* at 17. The Table in ¶ 35 indicate Plaintiff's monthly student loan payments are $1,368.58
[28] *Id.* at 16–17
[29] *Id.* at 15.

| | |
|---|---|
| Entertainment, clubs, recreation, newspapers, magazines, and books | $25 |
| Renters insurance | $6.67 |
| Car Payment | $217.08 |
| Student Loans | $1,368.58 |
| **Total** | **$3,545.71** |

Based on the figures shown above, Plaintiff's monthly income minus her monthly expenses results in a shortfall of $935.14. When factoring in the voluntary contributions from her boyfriend and Jones, Plaintiff is left with $454.86 each month.

Plaintiff initiated this adversary proceeding on March 20, 2021, seeking an Order determining that Plaintiff is entitled to a discharge of the Granite Loan because excepting the debt from her Chapter 7 discharge would constitute an undue hardship under § 523(a)(8).[30] Granite filed the pending Motion on August 20, 2021, arguing that Plaintiff fails to satisfy the *Brunner* test and that, accordingly, the Granite Loan should not be excepted from her Chapter 7 discharge.[31] Plaintiff filed an Objection to Granite's Motion on September 7, 2021, contending that genuine issues of material fact preclude the Court from granting summary judgment in favor of Granite.[32] As explained below, the Court agrees with Plaintiff and denies Granite's motion for summary judgment.

**ANALYSIS**

I. **Summary Judgment Standard.**

Rule 7056 makes Civil Rule 56(a) applicable in adversary proceedings and provides that summary judgment is appropriate "if the moving party shows that there is no genuine issue as to any material fact and the movant is entitled to summary judgment as a matter of law." *Wank v. Gordon (In re Wank)*, 505 B.R. 878, 886 (9th Cir. BAP 2014). The presiding court "may not weigh evidence in resolving such motions, but rather determines only whether a material factual dispute remains for trial." *Id.* A dispute is genuine if "there is evidence for a reasonable fact finder to hold in favor of the non-moving party, and the fact is 'material' if it might affect the outcome of the case." *Id.* (citing *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001). The moving party bears the burden to establish the absence of any genuine issue of material fact. *Wank*, 505 B.R. at 886.

II. **Section 523(a)(8).**

A creditor objecting to the dischargeability of its claim bears the burden of proving, by a preponderance of the evidence, that the debt to be excepted from discharge falls within one of the exceptions to discharge enumerated in § 523(a). *Grogan v. Garner*, 498 U.S. 279, 287 (1991). This case involves one such enumerated exception, § 523(a)(8), which generally excepts

---

[30] ECF No. 1.
[31] ECF No. 20.
[32] ECF No. 24.

student loan obligations from a debtor's discharge under § 727, unless repaying such loans would "impose an undue hardship on the debtor." It is undisputed that the Granite Loan at issue is of the kind which § 523(a)(8) generally excepts from discharge. Accordingly, the Court must determine whether excepting the Granite Loan from Plaintiff's discharge would impose an undue hardship on her.

### III.    The *Brunner* Test.

To determine whether the "undue hardship" standard has been met, the Court must apply the *Brunner* test adopted by the Ninth Circuit in *In re Pena*. 155 F.3d 1108, 1111 (9th Cir. 1998). To satisfy the undue hardship standard, the three-pronged *Brunner* test requires that a debtor establish each of the following:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
> (2) that "additional circumstances" exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and
> (3) that the debtor has made good faith efforts to repay the loans.

*Id.* "The three *Brunner* prongs are not elements a court throws in a vial, and then mixes and spins to arrive at an amalgam called 'undue hardship.' Rather, they are stand-alone requirements." *In re Roth*, 490 B.R. 908, 916 (9th Cir. BAP 2013). "[T]he burden of proving undue hardship is on the debtor, and the debtor must prove all three elements before discharge can be granted." *In re Rifino*, 245 F.3d 1083, 1087–88 (9th Cir. 2001).

### A.  First *Brunner* prong– "Minimal Standard of Living."

The first prong of the *Brunner* test, as interpreted by the Ninth Circuit, requires only that a debtor prove she "cannot maintain, based on *current* income and expenses, a 'minimal' standard of living." *Rifino*, 245 F.3d at 1088 (9th Cir. 2001) (citing *Brunner*, 831 F.2d at 396) (emphasis added). Granite contends that Plaintiff also has an obligation to "maximiz[e] her income" and "minimize[e] her expenses" under § 523(a)(8) and the first prong of *Brunner*.[33] As such, Granite contends that the appropriate test for the Court to apply is "whether it would be 'unconscionable' to require the debtor to take steps to earn more income or reduce her expenses."[34]

The test Granite advocates be applied is derived from *In re Nascimento*, 241 B.R. 440, 445 (9th Cir. BAP 1999). Subsequent Ninth Circuit jurisprudence clarified the scope of *Nascimento* and held that the first *Brunner* factor does not require a Plaintiff to maximize their income or minimize their expenses as Granite suggests. *See In re Mason*, 464 F.3d 878, 882 n.3 (9th Cir. 2006) (concluding that *Nascimento* "appears to impose no such requirement" that a debtor must maximize their income to meet the first prong of the *Brunner* test). To the contrary, the Ninth Circuit has unequivocally held that the first prong of *Brunner* does not require a debtor

---

[33] *Id.* at 12.
[34] *Id.* (citing *In re Nascimento*, 241 B.R. 440, 445 (9th Cir. BAP 1999)).

to maximize income or minimize expenses. *See Rifino*, 245 F.3d at 1088; *see also In re Ng-A-Qui*, 2015 WL 59223363 *5 (9th Cir. BAP 2015) ("[W]e hold that *Mason* forecloses an interpretation of *Birrane* or *Nascimento* requires a showing of income maximization under the first prong of the *Brunner* test.").

Granite also contends that the Court must also include the $890 monthly contributions Plaintiff previously received from Jones and the $500 per month she currently receives from her boyfriend in its calculation of her current monthly income.[35] However, Granite offers no authority in support of its contention that the Court should include these entirely voluntary contributions in the calculation of Plaintiff's monthly income. Even more, at least one court has concluded to the contrary. *In re Hutsell*, 620 B.R. 604, 611 (Bankr. N.D. Ohio 2020) ("a debtor's receipt of noncompulsory charity from a third party should generally be excluded when determining whether a debtor meets the first *Brunner* prong."). The Court is unpersuaded by Granite's contention that voluntary funds given to Plaintiff by Jones or her boyfriend are relevant here. It concludes that Plaintiff's income is that derived solely from her employment–$2,610.57 per month.

Despite Granite's contentions, the Court is not inclined to engage in an analysis beyond that required under *Brunner*'s first prong –whether Plaintiff can maintain a minimal standard of living based on her *current* income and expenses. Plaintiff's current net monthly pay is $2,610.57. Her current expenses are $3,545.71. Since a $935.14 deficit exists between these two amounts, the Court concludes Plaintiff cannot maintain a minimal standard of living based on her current monthly income and expenses.

The Court concludes that Granite is not entitled to summary judgment as to the first prong of *Brunner*. Although there appear to be no genuine issues of material fact with respect to the first prong, the Court also declines to grant summary judgment in favor of Plaintiff at this juncture. As explained below, genuine issues of material fact with respect to the remaining two *Brunner* factors necessitate a trial in this case. Accordingly, the Court elects not to rule definitively with respect to the first *Brunner* prong until the trial concludes.

### B. Second *Brunner* prong– "Additional Circumstances."

The second prong of the *Brunner* test requires the debtor establish that "additional circumstances" exist that indicate the current state of affairs is likely to persist for a significant portion of the repayment period of the student loans. *Brunner*, 831 F.2d at 396. However, the Ninth Circuit has clarified that the "additional circumstances" prong does not impose on the debtor "a separate burden to prove 'additional circumstances' beyond the inability to pay presently or in the future." *Mason*, 464 F.3d at 882. To assist courts in analyzing the second *Brunner* factor, the Ninth Circuit has also developed an "unexhaustive" list of "additional circumstances" to consider:

> (1) Serious mental or physical disability of the debtor or the debtor's dependents which prevents employment or advancement; (2) The debtor's obligations to care for

---

[35] ECF No. 20 at 14.

dependents; (3) Lack of, or severely limited education; (4) Poor quality of education; (5) Lack of usable or marketable job skills; (6) Underemployment; (7) Maximized income potential in the chosen educational field, and no other more lucrative job skills; (8) Limited number of years remaining in [the debtor's] work life to allow payment of the loan; (9) Age or other factors that prevent retraining or relocation as a means for payment of the loan; (10) Lack of assets, whether or not exempt, which could be used to pay the loan; (11) Potentially increasing expenses that outweigh any potential appreciation in the value of the debtor's assets and/or likely increases in the debtor's income; (12) Lack of better financial options elsewhere.

*In re Nys*, 446 F.3d 938, 947 (9th Cir. 2006).

While the Court may consider these factors, "neither *Brunner* nor *Pena* imposes a requirement that additional circumstances be 'exceptional' in the sense that the debtor must prove a 'serious illness, psychiatric problems, disability of a dependent, or something which makes the debtor's circumstances more compelling than that of an ordinary person in debt.'" *Id.* at 946. Although a debtor cannot purposely choose a lifestyle that prevents her from repaying student loans, the court also cannot fault her for having made reasonable choices that inhibit her ability to substantially increase her income in the future. *Id.*

Granite argues that the *Nys* factors "overwhelmingly demonstrate" that Plaintiff cannot satisfy her burden of establishing "additional circumstances" exist indicating that her present inability to pay the Granite Loan will continue for a substantial portion of the loan's existence.[36] Further, Granite contends that Plaintiff has failed to maximize her income potential in her chosen field by choosing not to pursue a paralegal certification or seek employment in the private sector.[37]

Plaintiff disagrees with each of Granite's contentions. She notes that although her income has steadily increased since she completed her undergraduate studies, she does not expect it to increase to the point necessary to make paying the Granite Loans feasible.[38] Further, Plaintiff contends that, if anything, her expenses will likely increase in the future, not decrease.[39] She notes that although she is currently single and living in an apartment, she hopes to one day purchase a home, start a family, and save towards retirement. According to Plaintiff, each of these goals have been stymied because of the issues associated with debt service on the Granite Loan.[40]

At its core, the second *Brunner* factor is focused on the ability or inability for Plaintiff to make future payments on the Granite Loan. While the *Nys* factors are persuasive, the Court is not convinced that the evidence "overwhelmingly demonstrates" the absence of any "additional

---

[36] *Id.* at 18.
[37] *Id.* at 20.
[38] ECF No. 24 at 9.
[39] *Id.*
[40] *Id.* at 9–10.

circumstances" that would make Plaintiff's present inability to pay the Granite Loans continue into the foreseeable future as Granite contends.

Moreover, Granite offers virtually no evidence in support of its discussion of each *Nys* factor. Granite asserts, for example, that Plaintiff has failed to maximize her income in her chosen field or that more lucrative employment exists based on her current job skills. In support of this assertion, Granite argues that Plaintiff could obtain more lucrative employment by returning to school to obtain her paralegal certification. However, Granite fails to offer any evidence beyond Plaintiff's own deposition testimony, which suggests that such a pursuit would actually not lead to increased income at all.[41] Granite's contention also fails to acknowledge the reality that such a pursuit would almost certainly require Plaintiff to incur more student loan debt or pay for the advanced education out-of-pocket, both of which are equally troubling propositions in the Court's view.

Granite also fails to offer any evidence suggesting that Plaintiff could earn more in the private sector than she currently does in the public sector. Indeed, the only evidence in the record as to this issue, Plaintiff's deposition testimony, suggests the opposite.[42] Finally, Granite's contention that the discharge of Plaintiff's credit card debt following her Chapter 7 case establishes that her monthly expenses will decrease for the foreseeable future is not persuasive.[43] As noted, Plaintiff hopes to one day start a family, purchase a home, and retire. At this stage, the Court does not read *Brunner* to require that a debtor must forego parenthood, homeownership, or retirement unless and until student loans have been paid in their entirety.

Ultimately, the Court concludes that genuine issues of material fact preclude it from determining that Plaintiff can prove no "additional circumstances" under the second *Brunner* prong. Namely, these issues include whether Plaintiff can obtain more lucrative employment in her chosen field and/or whether better financial options exist for her elsewhere. A genuine issue of material fact also exists as to whether Plaintiff's monthly expenses are "unnecessary and excessive," as Granite suggests.[44] At best, Granite's Motion establishes the absence of the evidence necessary for the Court to undertake the robust examination of Plaintiff's financial existence, both present and future, that the second prong of *Brunner* requires. At trial, Granite will have the opportunity to introduce such evidence. Accordingly, summary judgment is denied as to the second *Brunner* factor.

### C. Third *Brunner* Prong– "Good Faith."

Under the third prong of the *Brunner* test, the Court is tasked with determining whether Plaintiff has made "good faith efforts to repay the loans." *Pena*, 144 F.3d at 1111; *Brunner*, 831

---

[41] ECF No. 21 at 6–7. Plaintiff testified that obtaining her paralegal certificate "would not increase her income at all" and that she has "worked with a lot of other people who have paralegal certificates and they're working in the same position that I am without one."
[42] *Id.* at 7. Plaintiff testified that it is her understanding that "most private law firms pay less" and that they do not offer the same retirement and/or health insurance benefits.
[43] ECF No. 20 at 21.
[44] *Id.* at 14.

F.2d at 396. The question of "good faith" is determined by a debtor's efforts to "obtain employment, maximize income, and minimize expenses." *Roth*, 490 B.R. at 917 (quoting *Mason*, 464 F.3d at 884). The Ninth Circuit Bankruptcy Appellate Panel has assembled the following list of factors for courts have considered in making a good faith determination under *Brunner*:

> (1) whether the debtor has made any payments on the loan prior to filing for discharge, although a history of making or not making payments is, by itself, not dispositive; (2) whether the debtor has sought deferments or forbearances; (3) the timing of debtor's attempt to have the loan discharged; (4) whether the debtor's financial condition resulted from factors beyond her reasonable control, as a debtor may not willfully or negligently cause her own default.

*Roth*, 490 B.R. at 917. "Courts will also consider a debtor's effort–or lack thereof–to negotiate a repayment plan," although a debtor's "failure to negotiate or accept an alternative repayment plan is not dispositive." *Id.*

Granite contends that, although Plaintiff "has a track record of making timely payments," she is nonetheless unable to establish "good faith" as a matter of law. Instead, it asserts that Plaintiff's payment history is outweighed by her "failure to minimize expenses, including numerous excessive or unnecessary expenses in her budget, and overwhelming failure to maximize income."[45] Plaintiff contends that her payment history alone establishes good faith under *Brunner*.[46] Plaintiff also argues that she contacted Granite about reducing the amount of her monthly payments and was told there were no options for an income-based repayment plan.[47]

After considering the Ninth Circuit's *Roth* factors, the Court concludes that a genuine issue of material fact exists as to the third *Brunner* prong. The parties appear to agree that Plaintiff's timely payment history is indicative of good faith efforts on her part.[48] There is similarly no dispute that Plaintiff sought (and was granted) an economic hardship deferment.[49] Plaintiff also contends that she contacted Granite to negotiate an income-driven payment plan, which was denied. At this stage, the Court is not concerned as to the timing of Plaintiff's attempt to seek a discharge of her student loans, and none of the evidence suggests a "rush to the courthouse" to obtain such relief. *See Brunner*, 831 F.3d at 397 (declining to find good faith where debtor sought a discharge of student loans within the first month they became due).

Instead, the dispute as to the third *Brunner* prong appears to focus on the fourth *Roth* factor–whether Debtor's current financial condition resulted from factors beyond her control. Granite argues in the affirmative, arguing that Plaintiff's inability to pay the Granite Loan stems from her refusal to maximize her income and minimize her expenses. Plaintiff disagrees and argues that no higher-income job opportunities are available in her chosen field and that a career shift to the private sector would not provide her access to the same benefits she currently enjoys.

---

[45] ECF No. 20 at 24.
[46] ECF No. 24 at 10.
[47] ECF No. 26 at 18–19.
[48] ECF No. 20 at 24; ECF No. 24 at 10.
[49] ECF No. 20 at 24.

As mentioned above, Plaintiff also disputes that her monthly budget includes any "unnecessary or excessive expenses." Accordingly, a genuine issue of material fact exists as to Plaintiff's "good faith efforts" to repay the Granite Loan. Summary judgment in favor of Granite is denied.

## CONCLUSION

In light of the foregoing, the Court concludes that summary judgment in favor of Granite must be denied, as genuine issues of material fact exist as to each of the three *Brunner* factors. The Court will enter a separate order denying Granite's Motion.

Dated November 29, 2021.

BY THE COURT:

Hon. Benjamin P. Hursh
United States Bankruptcy Court
District of Montana